Filed 11/5/15  In re Stephon W. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re STEPHON W., a Person Coming Under the Juvenile Court Law. | B262415 (Los Angeles County Super. Ct. No. YJ38152) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>STEPHON W.,<br><br>        Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Irma J. Brown, Judge.  Affirmed with modification.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Analee J. Brodie, Deputy Attorney General, for Plaintiff and Respondent.

\*        \*        \*

The juvenile court found Stephon W. (minor) guilty of second-degree robbery and assault with a deadly weapon, and placed him on probation. Minor appeals the sufficiency of the evidence underlying his assault with a deadly weapon count and raises three challenges to his sentence. We conclude that the court erred in announcing a maximum term of imprisonment for a probationary sentence, but otherwise reject minor's challenges. Accordingly, we affirm with instructions to strike the court's declaration of a maximum term of imprisonment.

## FACTS AND PROCEDURAL BACKGROUND

In early January 2015, minor and Devon Q. (Devon) approached a teenager on a street corner. Devon pointed a gun at the teen's chest and then at his head while minor searched the teen's pockets. After minor found and took an iPhone and cord, both minor and Devon fled on foot. Devon was arrested minutes later with a backpack containing an iPhone and an "air soft pistol."

Because minor was 16 years old at the time of this incident, the People filed a petition in juvenile court alleging "felony," second-degree robbery (Pen. Code, § 211), and alleging that a principal was armed with a firearm (*id.*, § 12022, subd. (a)(1)). Before trial began, the People orally amended the petition to allege assault with a deadly weapon (*id.*, § 245, subd. (a)(1)). After hearing the evidence, the juvenile court dismissed the firearm enhancement because the "pellet gun" was not a "firearm." The court nevertheless found minor guilty of second-degree robbery and assault with a deadly weapon, and declared him to be a ward of the court under Welfare and Institutions Code section 602.[1]

The juvenile court placed minor on probation, including a term of 30 days community detention, 100 hours of community service and other standard conditions of probation.

Minor timely appeals.

---

[1]     Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

# DISCUSSION

## I.      Sufficiency of the Evidence

The crime of assault with a deadly weapon requires proof that the defendant (1) "commit[ted] an assault upon the person of another," (2) "with a deadly weapon or instrument other than a firearm." (Pen. Code, § 245, subd. (a)(1).) Minor does not contest that Devon assaulted the teen or that minor aided and abetted Devon's assault; instead, he argues that there was insufficient evidence that the pellet gun Devon used in that assault qualifies as a "deadly weapon." In evaluating this challenge, we ask whether the evidence "can reasonably support a finding" as to this element beyond a reasonable doubt, and do so while viewing the evidence in the light most favorable to, and drawing all reasonable inferences to support, that finding. (*People v. Sigur* (2015) 238 Cal.App.4th 656, 667.)

A "deadly weapon" is "'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.'" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029 (*Aguilar*), quoting *In re Jose R.* (1982) 137 Cal.App.3d 269, 275-276; *In re R.P.* (2009) 176 Cal.App.4th 562, 567.) Some objects are "deadly weapons as a matter of law"; dirks and blackjacks so qualify. (*Aguilar*, at p. 1029.) An object that is not "deadly per se" can still be a "deadly weapon" if it is "used, under certain circumstances, in a manner likely to produce death or great bodily injury." (*Ibid.*) "In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider [(1)] the nature of the object, [(2)] the manner in which it is used, and [(3)] all other facts relevant to the issue." (*Ibid.*) Applying this test, screwdrivers and pencils have qualified as "deadly weapons." (See *People v. Simons* (1996) 42 Cal.App.4th 1100, 1106 [defendant brandished screwdriver]; *People v. Page* (2004) 123 Cal.App.4th 1466, 1472 [defendant held pencil to victim's neck].)

The pellet gun, as Devon used it in this case, qualifies as a "deadly weapon." A loaded and operable pellet gun can expel small pellets at high velocity, which makes it a "deadly weapon" "as a matter of law." (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533,

3

535 (*Lochtefeld*) [pellet gun held at victim's head, when gun was later tested and found to be operational]; *People v. Brown* (2012) 210 Cal.App.4th 1, 8 [pellet gun shot at close range].) Indeed, the reason why pellet/air guns do not qualify as "firearms" is because they use air—rather than explosions—to propel their bullets. (*In re Jose A.* (1992) 5 Cal.App.4th 697, 700-701; accord, *People v. Dixon* (2007) 153 Cal.App.4th 985, 1001.) Minor notes that the People did not introduce evidence that Devon's pellet gun was loaded and working, but it is well settled that a trier of fact may reasonably infer from an assailant's words and actions that a gun was loaded and operable. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 12; *People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1436-1437 ["criminals 'do not usually arm themselves with unloaded guns when they go out to commit robberies'"].) Here, as in *Lochtefeld*, Devon's "own words and actions, in both verbally threatening and in displaying and aiming the gun at others, fully supported the jury's determination that the gun was sufficiently operable." (*Lochtefeld*, at p. 541.)

## II.     Sentencing Issues

### A.     *Violation of section 702*

Where a crime is punishable as either a felony or a misdemeanor, section 702 mandates that the juvenile "court shall declare the offense to be a misdemeanor or felony." (§ 702; see also Cal. Rules of Court, rule 5.795, subd. (a) ["the court must . . . declare on the record that it has made such consideration and must state its determination as to whether the offense is a misdemeanor or a felony"].) This mandate "serves the purpose of ensuring that the juvenile court is aware of, and actually exercises, its discretion" with respect to such "wobbler" offenses. (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1207 (*Manzy W.*).)

Courts have interpreted this mandate "strict[ly]." (*In re Jacob M.* (1987) 195 Cal.App.3d 58, 65.) On the one hand, a juvenile court is not deemed to have made a sufficient "declar[ation]" just because the petition charged the offense as a felony (*Manzy W.*, *supra*, 14 Cal.4th at p. 1208; *In re Ricky H.* (1981) 30 Cal.3d 176, 191, superseded on other grounds by § 202 (*Ricky H.*)), just because the court imposed a "felony-level period of physical confinement" (*Manzy W.*, at p. 1208), or just because the court's minute order

4

"reflect[s] that the juvenile court found the [crime] to be a felony" if the "transcript of the hearing does not support this notation" (*In re Dennis C.* (1980) 104 Cal.App.3d 16, 23; *Manzy W.*, at p. 1208, citing *In re Kenneth H.* (1983) 33 Cal.3d 616, 619-620 (*Kenneth H.*)).  On the other hand, "a signed 'Findings and Order' which stated that the charged . . . *felony* was to run concurrent . . . [is] an 'explicit finding' of felony status."  (*Kenneth H.*, at p. 620, fn. 6, quoting *In re Robert V.* (1982) 132 Cal.App.3d 815, 823.)

Although the People do not oppose a remand on this issue, we conclude that the juvenile court in this case made the requisite "declar[ation]" under section 702.  In its minute order, the court declared—on the line specifying that the "Offense is declared to be a Felony (count(s) __) [or] misdemeanor (count(s) __)"—that counts 1 and 2 were to be "Felon[ies]."  Moreover, the minute order specifies that "Count [*sic*] 1 & 2 are both strikes and 707(b) . . . offenses" and the court specifically advised minor that he had "just been convicted or ha[d] a sustained petition as a strike."  Because only juvenile adjudications as to certain felonies may be "strikes" under our "Three Strikes" law (Pen. Code, § 667, subd. (d)(3); Welf. & Inst. Code, § 707, subd. (b); *People v. Garcia* (1999) 21 Cal.4th 1, 13 [so explaining]), the court's determination that these offenses were strikes is necessarily a declaration that they are felonies.  Although the court could have given a more fulsome explanation as to *why* she was exercising her discretion to declare these crimes to be felonies, the combined record of the minute order and the court's pronouncements during the sentencing hearing indicate that she *did* so declare.

Even if we were to conclude that an even more express declaration on the record was required (as rule 5.795, subdivision (a) seems to suggest), we conclude that any error is harmless.  The absence of a "formal declaration" does not "automatically" mandate a remand; instead, remand depends on whether the juvenile court was "aware of, and exercised its discretion" to declare the offenses felonies or misdemeanors.  (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.)  Here, the court checked the box indicating "felonies" rather than "misdemeanors", and advised minor that his convictions were "strikes"; on these facts, "remand would be merely redundant."  (*Ibid.*)

5

### B. *Violation of section 726, subdivision (d)(1)*

Section 726, subdivision (d)(1), requires a juvenile court to specify the "maximum term of imprisonment" "[i]f the minor is removed from the physical custody of his or her parent . . . as the result of an order of wardship." (§ 726, subd. (d)(1).) In this case, minor was placed on probation (rather than removed from his parents' custody), but the juvenile court nevertheless fixed a maximum term of imprisonment. Minor objects. Although appellate courts have treated the unnecessary fixing of a maximum term as harmless error (*In re Ali A.* (2006) 139 Cal.App.4th 569, 574, fn. 2, overruled on other grounds in *In re A.C.* (2014) 224 Cal.App.4th 590, 592), they have more recently started striking the maximum term (*In re A.C.* (2014) 224 Cal.App.4th 590, 591-592.) We adhere to this more recent precedent, and order the maximum term stricken from the sentence.

### C. *Probation condition*

A juvenile court may place a juvenile on probation and "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b); *In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*).) Minor contends that the juvenile court erred in imposing the following standard condition of probation: "You must go to school every day. You must be on time to each class. You must have good behavior at school. You must receive satisfactory grades." Minor concedes that this condition advances his rehabilitation (and thus is not an abuse of discretion in that regard [*People v. Olguin* (2008) 45 Cal.4th 375, 379]), but asserts that it is unconstitutionally overbroad. The question of constitutionality is one we review de novo. (*Sheena K.*, at pp. 887-889.)

Minor chiefly argues that the condition is overbroad because it requires him to be at school on time every day, with no exception for tardiness or absences beyond his control (such as family events or emergencies). But the lack of these exceptions does not render the condition overbroad. In *In re Damian M.* (2010) 185 Cal.App.4th 1, for example, the court upheld a probation condition following a juvenile's conviction

6

requiring the juvenile's parents to attend the juvenile's school program notwithstanding the possibility that this condition would be violated if the *parents* elected not to participate. (*Id.* at pp. 6-7.) This possibility did not invalidate the underlying condition because a court faced with such a "violation" could not "impose probation sanctions on [the juvenile] for actions of others, over which he has no control." (*Id.* at p. 7; accord, *People v. Cervantes* (2009) 175 Cal.App.4th 291, 295 ["Where a probationer is unable to comply with a probation condition because of circumstances beyond his or her control and defendant's conduct was not contumacious, revoking probation and imposing a prison term are reversible error"]; cf. *In re Juan G.* (2003) 112 Cal.App.4th 1, 6-7 [error to impose probation condition requiring juvenile to maintain a "B" average when he would never be able to comply because his past history indicated that such grades were "beyond [the juvenile's] capacity"].)

Minor implores us to use a stricter level of scrutiny because, in his view, the requirement that he attend school every day impinges his constitutional right to privacy. To be sure, our state constitution explicitly confers a right to "privacy" that applies to minors. (Cal. Const., art. I, § 1; *Am. Acad. of Pediatrics v. Van De Kamp* (1989) 214 Cal.App.3d 831, 844.) But the "scope and application of that constitutional right differs significantly from the rights enjoyed by adults." (*In re Carmen M.* (2006) 141 Cal.App.4th 478, 492; see *In re T.A.J.* (1998) 62 Cal.App.4th 1350, 1361-1362 [minors do not have the constitutional right to engage in sexual acts].) More to the point, California has a compulsory education law that *requires* minors to attend school. (Ed. Code, § 48200; *Jonathan L. v. Superior Court* (2008) 165 Cal.App.4th 1074, 1090.) In light of the compelling interest that compulsory education serves, there is no constitutional right to "ditch" school. We consequently decline minor's request that we rely on such a right to invalidate this probation condition.

7

## DISPOSITION

The juvenile court is ordered to strike the reference to the maximum term of confinement in its final order.  As modified, the judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____
HOFFSTADT, J.

We concur:

_____
BOREN, P. J.

_____
CHAVEZ, J.